## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DMITRY FASOLYAK,

      Plaintiff,

      v.

THE CRADLE SOCIETY, INC.,

      Defendant.

Civil Action No.  06-01126 (TFH)

## MEMORANDUM OPINION

Pending before the Court are two motions filed by the defendant, The Cradle Society, Inc., the first of which requests that this case be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and the second of which seeks a protective order prohibiting the plaintiff, Dmitry Fasolyak, from conducting any discovery, presumably until the Court makes this determination about whether it has personal jurisdiction over the defendant.  Also pending before the Court is the plaintiff's Motion to Compel Discovery and Alternative Motion to Compel Rule 26(f) Conference and Motion for Emergency Hearing, which requests that the Court enter an order permitting discovery to proceed immediately and compelling the defendant to attend a scheduling conference.  For the reasons set forth below, the Court finds that it lacks personal jurisdiction but that jurisdiction may be appropriate in the United States District Court for the Northen District of Illinois.  Accordingly, this case will be transferred to the United States District Court for the Northern District of Illinois pursuant to 28

U.S.C. § 1631.

## BACKGROUND

This case is traveling a road to resolution that involves detours through multiple jurisdictions. The plaintiff is an individual who resides in Maryland and the defendant is a not-for-profit corporation incorporated in Illinois, which also is where its principal office is located. Compl. ¶¶ 1-2. The plaintiff alleges that he and the defendant entered into a contract according to which the defendant agreed to pay the plaintiff a fee for consulting services to establish and coordinate an international adoption program in the Russian Federation for the purpose of placing Russian children with adoptive parents in the United States.[1] Compl. ¶¶ 8-11; Rule 16(b) Statement 1 (Plaintiff's Statement of Fact). The plaintiff claims that he set up an office in Moscow for the defendant, identified individuals the defendant could employ to process adoptions in Russia, and assisted to secure accreditation from the Russian government to authorize the defendant to conduct adoptions in that country, among other services performed. Rule 16(b) Statement 2. According to the plaintiff, however, after the Moscow office became operational the defendant engaged in a number of activities that were intended to "circumvent" the plaintiff "to avoid paying his fee" and otherwise interfere with his contract performance, which allegedly culminated in the defendant wrongfully terminating the contract and defaming the plaintiff. *Id.*; Compl. ¶¶ 92-100, 155. Accordingly, the plaintiff filed the instant lawsuit

---

[1]    The Agreement between the parties, which is dated January 1, 2004, provides that the defendant would "cause" adoptive families to pay a fee in the amount of $16,500.00. Agreement ¶ 2(a) (Jan. 1, 2004). The Court presumes this fee benefited the defendant, notwithstanding the fact that the fee was to be made payable to a different name, *i.e.*, Alexander Sukharev. *Id.*

against the defendant seeking (1) damages for breach of contract, intentional misrepresentation (fraud and deceit), negligent misrepresentation, unjust enrichment, quantum meruit, and tortious interference with prospective economic advantage, (2) an injunction to prevent the defendant from further defaming or disparaging him, and (3) "a full accounting of the operations at the Moscow office and of defendant related to Russian adoptions." Compl. ¶¶ 101-166; Rule 16(b) Statement 3.

This is not the first jurisdiction where the plaintiff filed suit, however. The plaintiff originally filed a lawsuit against the defendant in the United States District Court for the District of Maryland, asserting what appear to be the very same claims advanced in the present case. *Fasolyak v. The Cradle Society, Inc.*, No. 06-CV-00622-AW, slip op. at 4 (D. Md. June 14, 2006). On June 15, 2006, Judge Alexander Williams, Jr. issued a Revised Memorandum Opinion in the Maryland case granting the defendant's Motion to Dismiss for lack of personal jurisdiction and indicating the court's intent to transfer the case to the Northern District of Illinois. *Id.* at 1. Judge Williams determined that the contract's place of performance was Russia, the fact that the defendant sent letters, e-mails, and made telephone calls to the plaintiff in Maryland did not establish substantial contacts sufficient to exercise personal jurisdiction over the defendant, the plaintiff failed to prove "to a sufficient degree" that the defendant was ever in Maryland, the acts that caused the alleged injuries occurred in Russia, "the technical fact that Maryland served as the place of contracting is not a sufficient contact . . . to have personal jurisdiction over the [d]efendant," and the other factors outlined in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), favored jurisdiction in Russia and weighed against the exercise

of personal jurisdiction by the court in Maryland.  Judge Williams ultimately concluded that "although a choice of law provision is not a part of the contacts analysis from *International Shoe* or *Burger King*, having a choice of law provision weighs in favor of giving jurisdiction over a case to the forum specified by the contract.  Here, the parties have stipulated that the contract should be governed by the law of the state of Illinois, so Illinois would be a more appropriate forum to litigate this dispute."  *Fasolyak*, No. 06-CV-00622-AW, at 12.  At the plaintiff's request, however, the court eventually dismissed the case rather than transfer it.  Meanwhile, the defendant reportedly filed a lawsuit against the plaintiff in an Illinois state circuit court alleging that the plaintiff failed to perform the contract as promised.  Pl.'s Mem. of Law In Opp'n to Def.'s Mot. to Dismiss 7-8 [hereinafter "Pl.'s Opp'n Br. ___"].

The case subsequently found its way to this Court on June 21, 2006, when the plaintiff essentially refiled his Complaint in this jurisdiction.  The defendant responded to the instant lawsuit in the same fashion that it responded to the previous one filed in Maryland – the defendant moved for dismissal on the ground that, like the federal district court in Maryland, this Court lacks personal jurisdiction over the defendant because the defendant "is a foreign corporation organized under the laws of Illinois, its principal place of business is in the State of Illinois, and the Defendant does not have sufficient minimum contacts with the District of Columbia to establish personal jurisdiction."  Def.'s Mot. to Dismiss 1.  While the defendant's motion to dismiss was pending before this Court, the plaintiff secured two subpoenas from the United States District Court for the Northern District of Illinois compelling witnesses to appear for depositions and produce specified documents.  These subpoenas were the subject of the

defendant's pending Motion for Protective Order, which seeks an order from the Court prohibiting all discovery. Def.'s Mot. for Protective Order 3. The plaintiff countered by filing a Motion to Compel Discovery and Alternative Motion to Compel Rule 26(f) Conference and Motion for Emergency Hearing, which, as is self evident, seeks an order compelling the defendant to engage in discovery. Pl.'s Mem. of P. & A. in Supp. of Mot. to Compel 1.

## DISCUSSION

### I.        The Defendant's Motion To Dismiss

Because the question of personal jurisdiction is a threshold inquiry the resolution of which will, *ipso facto*, determine the outcome of the other pending discovery motions, the Court will address that issue first, as indeed it must given that "[j]urisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."[2] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). The plaintiff bears the burden of establishing a factual basis for exercising personal jurisdiction over the non-resident defendant. *Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005); *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). "In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane*, 894 F.2d at 456. Because no evidentiary hearing was held, the plaintiff may carry his burden by making a *prima facie* showing that personal jurisdiction exists. *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991); *Reuber v. United States*, 750 F.2d 1039,

_____

[2]        Subject matter jurisdiction is not at issue in this case.

- 5 -

1052 (D.C. Cir. 1984). This *prima facie* showing must be premised on specific facts, however, and cannot be based on mere conclusory allegations. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).

The plaintiff avers that the Court may exercise general jurisdiction over the non-resident defendant pursuant to D.C. Code § 13-422 and specific jurisdiction pursuant to D.C. Code § 13-423, which is the District of Columbia's long-arm statute.[3] Compl. ¶ 3. In addition, in his opposition brief filed in response to the defendant's Motion to Dismiss, the plaintiff argues that the Court also may exercise personal jurisdiction over the defendant because the defendant "is doing business here," which presumably is a reference to D.C. Code § 13-334(a), a statute that appears to involve only service of process but courts have construed to confer general jurisdiction.[4] Pl.'s Opp'n Br. 10; *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 673 n.7 (D.C. Cir. 1996) (noting that the District of Columbia Court of Appeals ("D.C. Court of appeals) has construed § 13-334(a) to "'confer[ ] jurisdiction upon trial courts here over foreign corporations doing substantial business in the District of Columbia, even though the claim arose from a transaction which occurred elsewhere, and hence, outside the scope of the long-arm statute'" (quoting *Guevara v. Reed*, 598 A.2d 1157, 1159 (D.C. 1991))). The Court will address in turn

---

[3] The Court's exercise of personal jurisdiction over the defendant in this diversity case "turns on local (state) law, here, District of Columbia law." *Crane*, 814 F.2d at 762. The Constitution, however, acts as a restraint on the scope of personal jurisdiction authorized by District of Columbia law. *Id.* "Due process sets the outer boundary; the local law may be coextensive with due process, or it may be more restrictive than the constitutional limit." *Id.*

[4] The Court makes this presumption based on the fact that the plaintiff cited *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002), which is a case analyzing general jurisdiction pursuant to D.C. Code § 13-334(a). Pl.'s Opp'n Br. 10.

each of the plaintiff's proffered bases for exercising personal jurisdiction.

    A.    <u>D.C. Code § 13-422</u>

Any argument that this Court may exercise general personal jurisdiction over the defendant pursuant to D.C. Code § 13-422 is easily resolved. The statute provides that "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. *Accord El-Fadl*, 75 F.3d at 671-72. A review of the plaintiff's Complaint and Memorandum of Law In Opposition to Defendant's Motion to Dismiss reveals no facts showing that the defendant is organized under the laws of the District of Columbia or maintains its principal place of business here. To the contrary, the plaintiff's Complaint and Memorandum of Law both concede that the defendant is organized under the laws of the state of Illinois and has its principal office there. Compl. ¶ 2; Pl.'s Opp'n Br. 1. Furthermore, the plaintiff makes no mention of D.C. Code § 13-422 in its brief opposing the defendant's Motion to Dismiss, stating instead that "[t]he Court's jurisdiction is predicated . . . on the District of Columbia long-arm statute," which is D.C. Code § 13-423. As mentioned above, the plaintiff's only argument in favor of exercising general personal jurisdiction is premised on the assertion that the defendant "does business" in the District of Columbia, which refers to D.C. Code § 13-334(a) and not D.C. Code § 13-422. So it appears the plaintiff has abandoned any claim that the Court may exercise general personal jurisdiction over the defendant pursuant D.C. Code § 13-422.[5]

_____

[5]    Even if the plaintiff were to challenge the notion that he abandoned asserting general personal jurisdiction pursuant to D.C. Code § 13-422, the D.C. Circuit's decision in *El-*

B.    D.C. Code § 13-423

The plaintiff next invokes two provisions of D.C. Code § 13-423 that he asserts authorize exercising specific personal jurisdiction over the defendant in this case, namely § 13-423(a)(1), which permits personal jurisdiction over a defendant "transacting any business in the District of Columbia," and § 13-423(a)(3), which permits personal jurisdiction over a defendant "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."[6] D.C. Code § 13-423; Pl.'s Opp'n Br. 1, 4; Compl. ¶ 3. As the plaintiff recognizes, *see* Pl.'s Opp'n Br. 4, when personal jurisdiction is asserted under either of these two sections of the statute, the claims for relief must arise from the very acts that establish jurisdiction. D.C. Code § 13-423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.").

To find that personal jurisdiction exists over a non-resident defendant in accordance with either of the asserted provisions of D.C. Code § 13-423 "a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the . . . long-arm

---

*Fadl* suggests that jurisdiction under that statute is inappropriate when the defendant is organized under the laws of another jurisdiction and maintains its principal place of business in that other jurisdiction. 75 F.3d at 672 n.6 (affirming "the district court's holding that it lacked jurisdiction under § 13-422 because the record shows that Petra Bank is organized under the laws of Jordan and maintains its principal place of business there").

[6]    The plaintiff inexplicably failed to identify exactly which provision(s) of D.C. Code § 13-423 relating to tort injuries he is relying on to assert personal jurisdiction. Because he claimed in his opposition brief that the "defendant's action in the District of Columbia caused harm to the plaintiff," the Court presumes that the plaintiff is asserting jurisdiction in accordance with D.C. Code § 13-423(a)(3) and will address the matter accordingly. Pl.'s Opp'n Br. 9-10 (stating that his "tort claims for negligent and intentional misrepresentation are based on the actions of Cradle Society in the District of Columbia").

statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs.*, 199 F.3d at 1347.  The United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has recognized that "Section (a)(1)'s 'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements" whereas "Section (a)(4) has been construed more narrowly . . . ."[7] *Id.*  Moreover, "[e]ven when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause." *Id.*  It is established beyond peradventure that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

To support his claim that the defendant "transacted business" in the District of Columbia sufficient to warrant exercising specific personal jurisdiction pursuant to D.C. Code § 13-423(a)(1) the plaintiff submitted a sworn affidavit in which he states that he met with the defendant's officers and employees in the District of Columbia on numerous occasions to discuss the contract and the parties' business relationship (Pl.'s Opp'n Br. Ex. 1 at ¶¶ 5-7, 14-17

---

[7]     Because D.C. Code § 13-423(a)(1) is coextensive with the Due Process Clause the Court's analysis merges into a "single inquiry" that asks whether the defendant established minimum contacts with the forum. *GTE New Media Servs.*, 199 F.3d at 1347.

[hereinafter "Fasolyak Aff. ¶ ___"]),[8] he and one of the defendant's officers met with the defendant's attorney at the attorney's office in the District of Columbia (Fasolyak Aff. ¶ 8), he and his agents visited the Embassy of the Russian Federation and the Russian Consulate in the District of Columbia to "perform activities" and meet with embassy officials to secure accreditation, visas, or other documentation necessary for the defendant to comply with official adoption procedures or otherwise travel to the Russian Federation (Fasolyak Aff. ¶¶ 9-10, 18-22), he met Russian Federation officials in the District of Columbia to discuss the defendant's business (Fasolyak Aff. ¶¶ 11-12), and he helped arrange a United States senator's visit to the Russian Federation (Fasolyak Aff. ¶ 13). These factual allegations are consistent with those made in the plaintiff's Complaint. Compl. ¶¶ 14-26, 33, 35-36, 47, 50-51, 57, 93.

The defendant elected not to counter the plaintiff's assertions of fact with its own affidavit but relied instead on the arguments raised in its legal briefs supporting the Motion to Dismiss, which generally declare that the parties' contract anticipated performance only in the Russian Federation (Def.'s Mot. to Dismiss 4; Def.'s Reply Br. 2,-3), the defendant never engaged in any activities in the District of Columbia sufficient to subject it to personal jurisdiction (Def.'s Mot. to Dismiss 4), none of the alleged injuries arose from contacts the defendant had with the District of Columbia (*id.*), the United States District Court for the District of Maryland already determined that the contract was performed in Russia and the federal court in Illinois should have jurisdiction (*id.*; Def.'s Reply Br. 2), "the defendant's duties and alleged

---

[8]     Although the affidavit attached as Exhibit 1 to the plaintiff's opposition brief contains a case caption for the lawsuit filed in Maryland, it is the Court's understanding that this particular affidavit was filed for the first time in this case.

wrongdoing were related to actions in Russia" (Def.'s Mot. to Dismiss 2, 4), and, generally, that the defendant "was not advertising or selling anything in Washington D.C." (Def.'s Reply Br. 4). The defendant further argues that the plaintiff's allegation that the parties' contract required him to process adoption applications at the Embassy of the Russian Federation "is blatantly false." Def.'s Reply Br. 2.

Whatever might be said about the defendant's contacts with the District of Columbia, it strikes the Court that traditional notions of fair play and substantial justice counsel against exercising specific personal jurisdiction pursuant to D.C. Code § 13-423(a)(1) under the particular circumstances presented here. "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation,'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)), and considers whether the defendant purposely availed itself of the privilege of conducting activities in the forum such that it could anticipate being haled into court there, *Burger King Corp.*, 471 U.S. 462, 474-75 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (internal quotations and citations omitted).

The Court notes from the outset that, with the exception of nebulous meetings with the plaintiff that are alleged to have taken place in the District of Columbia, *see* Discussion *infra*, the only "contacts" the defendant itself had with this forum are imputed from the plaintiff's unilateral activities at the Embassy of the Russian Federation and the Russian Consulate for the

purpose of securing required accreditation, providing required governmental documentation regarding Russian adoptions, and obtaining visas for travel, or the contacts relate to meetings the plaintiff alone had with Russian Federation officials. *See* Fasolyak Aff. ¶¶ 9-13, 18-22. District of Columbia law, however, precludes plaintiffs from "rely[ing] on [their] own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction." *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 812 (D.C. 1976) (en banc) ("The mere fact that a nonresident has retained the professional services of a District of Columbia firm, thereby setting into motion the resident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws."). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (stating that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). *Accord Burger King Corp.*, 471 U.S. at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.").

The plaintiff nevertheless contends that the decisions in *Helmer v. Doletskaya*, 393 F.3d 201 (D.C. Cir. 2004), *Ulico Cas. Co. v. Fleet Nat'l Bank*, 257 F. Supp. 2d 142 (D.D.C. 2003), and *Burger King Corp.*, *supra*, compel the conclusion that exercising personal jurisdiction is appropriate when the contract is substantially performed in the District of Columbia by either the plaintiff or the defendant. Pl.'s Opp'n Br. 5-6. These cases do not support that proposition. Each of the cited cases hinged to a great deal on the fact that they involved claims advanced by

forum residents regarding contracts that had a substantial connection to the forum.  The decision in *Helmer* involved a contract between a *resident* plaintiff and non-resident defendant for repayment of a credit card, which the court determined had a substantial connection to the District of Columbia "[b]ecause the contract was formed in the District of Columbia, the corpus of the contract involved credit cards issued to a District of Columbia resident and registered with a District of Columbia address, and the parties contemplated future repeated contacts with the District of Columbia as a condition of performance . . . ."  393 F.3d at 206.  Similarly, in *Ulico Cas. Co.*, our colleague on this Court expressly cited the District's substantial interest in providing a convenient forum to address *its citizens'* wrongs as a basis for exercising specific personal jurisdiction over a nonresident corporation that entered into a banking contract with a resident corporation.  257 F. Supp. 2d at 975.  The same can be said of the Supreme Court's decision in *Burger King Corp.*, which involved claims for breach of a franchise agreement between *resident* and non-resident corporate parties where the non-resident defendant had no significant presence in the forum but was found to have deliberately negotiated with the resident plaintiff for the franchise, "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts" with the plaintiff in the disputed forum, and voluntarily accepted "the long-term and exacting regulation of his business" by the resident plaintiff.  471 U.S. at 479-80.  In contrast, the contract in this case, which anticipates performance in the Russian Federation,[9] has no substantial connection to the District of

_____

[9]     This Court is inclined to agree with our sister court in Maryland that the contract anticipates performance of its obligations primarily in the Russian Federation.  *See Fasolyak*, No. 06-CV-00622-AW, slip op. at 7-8.  The contract makes no mention of any work to be performed specifically at the Embassy of the Russian Federation or generally in the District of

Columbia and was executed by non-resident parties.  Thus, the policies served by the decisions in the cited cases lose their force when, as is the case here, both parties to the dispute are non-residents, the contract contemplates no performance in the District of Columbia, and the defendant engaged in no act directed at District citizens or acted pursuant to a contract that anticipated future consequences here.  *See Helmer*, 393 F.3d at 205 (indicating that "a court must evaluate the 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether the defendant 'purposefully established minimum contacts within the forum" (quoting *Burger King Corp.*, 471 U.S. at 479)).

At this juncture it is worthwhile to point out that, although the defendant's business involves placing children from the Russian Federation with adoptive families in the United States, the plaintiff made no allegation that any adoptions performed by the defendant involve residents of the District of Columbia.  Nor has the plaintiff alleged that the defendant solicits

---

Columbia, albeit the plaintiff's duties are broadly defined to encompass the provision of "advice and coordination to The Cradle with respect to *all* activities in the Russian Federation which are necessary to achieve the placement of children from the Russian Federation with adoptive parents residing in the United States."  Compl. Ex. 1 (emphasis added).  The contract expressly states, however, that the plaintiff shall support the program "within the Russian Federation," assist in identifying staff "in the Russian Federation" to perform program functions, advise the defendant about "practices and procedures required by the Government of the Russian Federation" and "with respect to all actions necessary to maintain the accreditation of The Cradle by the Russian Federation," ensure that "all actions are taken in Russia which are necessary to complete adoptions under Russian law and regulations," and ensure the program "operates in compliance with all applicable Russian laws and regulations."  *Id.* Accordingly, the Court finds unpersuasive the plaintiff's assertion that "substantial performance" took place in this forum, particularly since the affidavit the plaintiff submitted in the prior litigation indicates that he performed "a significant portion" of the contract's requirement to set up, promote, manage and coordinate the defendant's Russian Program, as well as to monitor and supervise work on the defendant's adoption cases, in Maryland.  Def.'s Reply Br. Ex. A ¶ 11.

adoptive families or otherwise markets its services in the District of Columbia, whether by telephone calls into the District, advertising in publications that circulate in the District, or via an internet site used by District residents. *See*, *e.g.*, *id.* at 476 (noting that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted"). Indeed, according to the plaintiff, the only contacts the defendant itself had with the District of Columbia involved meetings the defendant's officers and employees attended with the plaintiff, who is a resident of Maryland and runs a consulting business in Maryland. Fasolyak Aff. ¶ 2. *See also Keeton*, 465 U.S. at 780 (acknowledging that a plaintiff's residence "may well play an important role in determining the propriety of entertaining a suit against the defendant in the forum" but "lack of residence will not defeat jurisdiction established on the basis of defendant's contacts"). The plaintiff offered no indication that the decision to hold meetings in the District of Columbia related in any way to business the defendant conducts here, versus the location being a mere fortuitous convenience (the plaintiff resides in Potomac, Maryland, which is a suburb of the District of Columbia).[10] The plaintiff's allegations with respect to the District of Columbia meetings are conclusory and offer only generalized time frames with no explanation about what the meetings entailed other than nondescript and self-serving statements that the discussions involved "the business" of the defendant, "performance of the Agreement," or were "to advance the purpose of the Contract." Fasolyak Aff. ¶ 5, 7, 14-15; Compl. ¶ 23; Pl.'s Opp'n Br. 9. A common sense approach dictates

_____

[10]    The plaintiff acknowledged that meetings also were held in Maryland. Fasolyak Aff. ¶ 7.

that the defendant could not have anticipated being haled into court in the District of Columbia when it engaged in no commerce or other activities directed at District of Columbia residents[11] and merely attended meetings here with another non-resident.  Particularly when those meetings related to business conducted in the Russian Federation pursuant to a contract that our sister court already determined was formed in Maryland, involved performance in the Russian Federation the consequences of which would be felt in Russia,[12] and that by stipulation was governed by Illinois law.  *Fasolyak*, No. 06-CV-00622-AW, slip op. at 7-12.

This Court also concurs with our sister court in Maryland with regard to the significance of the choice-of-law provision.  In *Burger King Corp.*, the Supreme Court admonished the lower court for failing to give "sufficient weight" to the choice-of-law provisions in the parties' franchise agreement.  The Supreme Court stated that a choice-of-law provision was not sufficient on its own to confer jurisdiction but nonetheless "reinforced" the defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." 471 U.S. at 481-82.  It seems to this Court that the same logic also would apply inversely in this case to reinforce the Court's conclusion that the non-resident defendant did not purposely avail itself of the privilege of conducting activities in the District of Columbia such that it could anticipate being haled into court here.

---

[11]     The D.C. Court of Appeals has stated that "[a] critical inquiry is whether [the defendant] 'has purposefully directed its activities at residents of the forum.'"  *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 269-70 (D.C. 2001) (quoting *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000)).

[12]     The D.C. Court of Appeals has emphasized that "the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here."  *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981) (per curium).  No

- 16 -

The Court also remains unconvinced that it may exercise specific personal jurisdiction over the defendant pursuant to D.C. Code § 13-423(a)(3), which, as mentioned previously, permits personal jurisdiction over a defendant who causes tortious injury in the District of Columbia by an act or omission that also occurred in the District of Columbia. D.C. Code § 13-423(a)(4). As a threshold matter, the plaintiff is unable to make out a *prima facie* case that jurisdiction exists under this section of the statute because he failed to identify any tortious act or injury that occurred in the District of Columbia. At best, the plaintiff argues in his opposition brief that the defendant represented to him that if he secured re-accreditation the defendant would pay him fees for every Russian adoption the defendant processed. Pl.'s Opp'n Br. 10. But the plaintiff never asserted any facts showing that the misrepresentation was made in the District of Columbia, for example during one of the meetings he claims he had with the defendant's officers and employees. The plaintiff's citations to his Complaint are to no avail – none of the paragraphs he cited state any facts demonstrating how the misrepresentation came about, whether via a telephone call, meeting, electronic mail, or some other form of communication. Compl. ¶¶ 48-55. More to the point, the plaintiff failed to aver a single fact in his Complaint indicating where the alleged misrepresentation occurred. As a consequence, the Court has no factual basis to support the exercise of jurisdiction over defendant based on tortious acts occurring in the District of Columbia. The same observations apply to the plaintiff's assertions about tortious injury – at no time has the plaintiff asserted any fact to support his contention that he was injured in the District of Columbia by any act committed by the defendant. At their essence, the plaintiff's claims of tortious acts and injuries are revealed to be bare conclusory allegations. As a result, the plaintiff has failed to allege specific facts sufficient

to meet his burden of establishing a *prima facie* case for the exercise of personal jurisdiction under this statute. *GTE New Media Servs.*, 199 F.3d at 1349 (holding that "conclusory statements and intimations" were not enough to establish personal jurisdiction).

C.     D.C. Code § 13-334

The plaintiff's final argument asserts that the Court may exercise general personal jurisdiction over the defendant pursuant to D.C. Code § 13-334, which has been construed by the courts to authorize general personal jurisdiction over non-resident defendants if the defendant is "doing business" in the District of Columbia, regardless of whether the actual claims arise from the defendant's contacts with the District. *See*, *e.g.*, *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). The D.C. Court of Appeals has held that the scope of jurisdiction under D.C. Code § 13-334 is coextensive with the Due Process Clause. *Id.* at 510. "For general jurisdiction, the Due Process Clause requires that the defendant have 'continuous and systematic general business contacts' with the forum." *El-Fadl*, 75 F.3d at 675. Given that this is a more rigorous standard than the "minimum contacts" necessary to establish specific personal jurisdiction, which the Court has found lacking in this case, it logically follows that the same contacts that were insufficient to support the exercise of specific jurisdiction cannot suffice to support the exercise of general jurisdiction.

To recapitulate, the facts presented to the Court indicate that the defendant is involved in the business of facilitating the adoption of Russian children by parents in the United States. No facts were alleged, however, to show that the defendant provides adoption services to District of Columbia residents or markets any of its services here. The plaintiff alleged that the defendant met with him multiple times in the District of Columbia, but the plaintiff offered no specific facts

to tie those meetings to business the defendant conducts here versus business conducted in Russia or elsewhere. Nor did the plaintiff show that the meeting with the defendant's counsel was in any way meaningful for the purpose of the Court's analysis. The plaintiff also omitted any facts demonstrating that those meetings were systematic and not occasional. So, with regard to the contacts the defendant itself had in the District of Columbia, the Court finds that they fall far short of the standard for exercising specific personal jurisdiction.

As was the case in the prior analysis, the remaining factual allegations advanced by the plaintiff involve his own acts and conduct in the District of Columbia, such as meeting with Russian Federation officials and conducting activities at the Embassy of the Russian Federation and the Russian Consulate. The Court is disinclined to agree that such acts demonstrate continuous and systematic business contacts with the District of Columbia in light of controlling precedent recognizing that general jurisdiction is inappropriate when a defendant's presence in this particular forum is necessitated by virtue of the fact that this is the only place where federal agencies, embassies, and other such instrumentalities are located. *See Fandel v. Arabian Am. Oil Co.*, 345 F.2d 87, 88-89 (D.C. Cir. 1965).

In *Fandel*, the D.C. Circuit considered whether it would be appropriate to exercise general personal jurisdiction over a Delaware oil-production corporation based on the fact that it maintained an office in the District of Columbia for diplomatic and intelligence relationships with government and private agencies interested in Middle East affairs. *Id.* at 88. Distinguishing the activities performed by the corporation's District office from those of a company "whose agents in Washington are seeking contracts, either with our own Government or with other governments represented in Washington," the D.C. Circuit ultimately concluded

that the corporation's presence was "of a kind we think this court has heretofore regarded as falling outside the range of Congressional contemplation of the scope of 'doing business' as that phrase is used in 13 D.C. Code § 334." *Id.* at 89. The D.C. Circuit cited a number of cases that it observed "constitute a recognition that Washington presents many business organizations with special needs for a continuous and ponderable physical presence there, which needs are not those customarily associated with strictly commercial operations; and that the purpose of Congress was not to make that presence in every case a base for the assertion of personal jurisdiction." *Id.*

This same reasoning applies to the defendant's alleged presence in the District of Columbia, which is premised on the plaintiff's activities at the Embassy of the Russian Federation and Russian Consulate for the purpose of complying with Russian legal requirements[13] that could be accomplished only at those facilities[14] and appear not to be for the purpose of soliciting business on behalf of the defendant. Fasolyak Aff. ¶¶ 9-12, 18-22. Thus, this Court is disposed to agree with our colleague that "it would not comport with due process

---

[13]   The plaintiff stated that he "had to make visits to and perform activities at the Embassy of the Russian Federation in Washington, D.C. and to meet with officials of the Russian government" to assist the defendant to obtain the accreditation required to conduct adoptions in Russia. Fasolyak Aff. ¶ 9. The plaintiff also stated that a Russian visa was required for adoptive parents and the defendant's employees to travel to the Russian Federation so he "made frequent trips to the Russian Consulate to meet – in Washington, D.C. – with Russian consular officers and process the required documents." *Id.* at ¶ 18-20. In addition, the plaintiff further stated that each Russian child must be registered at the Russian Consulate as a matter of Russian law, so he and his agents "traveled to and from Washington, D.C. to obtain and submit the required documents, to meet with Russian consular officers, and to perform the required registrations." *Id.* ¶ 21.

[14]   This reasoning also likely applies to the plaintiff's meetings with Russian government officials, which the Court assumes from context probably were treated as something akin to lobbying efforts. Because the plaintiff's allegations regarding those meetings were conclusory and failed to provide specific facts identifying their purpose, they are untenable to demonstrate continuous or systematic business contacts consistent with Due Process.

for this Court to exercise general jurisdiction over [the defendant] because of its contacts with

foreign embassies, as the District of Columbia is the only district in the country where these

embassies are located."[15] *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 76

(D.D.C. 2004) (J. Walton).  In a similar vein, the plaintiff's contacts with a United States senator

are subject to the "government contacts" exception to the exercise of personal jurisdiction, which

provides that contacts with federal agencies and instrumentalities located in the District of

Columbia "will not give rise to personal jurisdiction."  *United States v. Ferrara*, 54 F.3d 825,

831 (D.C. Cir. 1995).

## II.     The Plaintiff's Motion For Jurisdictional Discovery

The plaintiff requested leave to take jurisdictional discovery in the event the Court

"considers the allegations and evidence submitted insufficient."  Pl.'s Opp'n Br. 11.  It is the rule

in this circuit that "if a party demonstrates that it can supplement its jurisdictional allegations

through discovery, then jurisdictional discovery is justified."  *GTE New Media Servs.*, 199 F.3d

at 1351.  A plaintiff must, however, "have at least a good faith belief that such discovery will

enable it to show that the court has personal jurisdiction over the defendant."  *Caribbean Broad.*

*Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Thus, it is not error

to deny jurisdictional discovery when the record indicates there is nothing to be gained from the

effort.  *See Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994) ("[W]e

do not see what facts additional discovery could produce that would affect our jurisdictional

analysis above and therefore conclude the district court did not abuse its discretion in dismissing

---

[15]     The plaintiff stated in his affidavit that the Russian Consulate with territorial
jurisdiction over Illinois is located in the District of Columbia, so the same reasoning applies to
the defendant's activities at that institution as well.  Fasolyak Aff. ¶ 18.

the action when it did."). *Accord Natural Res. Def. Council v. Pena*, 147 F.3d 1012, (D.C. Cir. 1998) (agreeing that jurisdictional discovery should be permitted "if allegations indicate its likely utility").

Unlike the cases in this circuit where plaintiffs made specific and nonspeculative allegations demonstrating that jurisdictional discovery might in fact lead to evidence supporting the exercise of personal jurisdiction, *see*, *e.g.*, *Edmond*, 949 F.2d at 425-26, the plaintiff in this case offered nothing to support his request. He simply tacked on a one-sentence motion for discovery at the conclusion of his opposition brief without any explication about what he thought discovery might disclose with regard to likely contacts the defendant had with the District of Columbia or what information he thought might be gained from jurisdictional discovery that could possibly assist the Court in its analysis. The Court is loathe to subject a defendant to the costs and burdens of discovery, no matter how narrowly tailored, based on a plaintiff's naked assertion of entitlement. This is particularly so when, as is the case here, the jurisdictional facts already asserted have been conclusory and premised in large part on the plaintiff's unilateral acts rather than the defendant's purposeful contacts. Because the plaintiff made no showing whatsoever that jurisdictional discovery is warranted, the Court will deny the motion.

## III.    The Pending Discovery Motions

The Court's determination that it lacks personal jurisdiction over the defendant obviates the need for any ruling on the merits of the pending discovery motions.

## IV.    Whether Transfer Pursuant To 28 U.S.C. § 1631 Is In The Interests Of Justice

28 U.S.C. § 1631 authorizes intercourt transfer when an originating court finds that it lacks jurisdiction and the interests of justice warrant such a result. 28 U.S.C. § 1631. "There are

three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992) (internal citations omitted). This Court has determined that it lacks personal jurisdiction over the defendant and, without expressing any opinion about the merits of the plaintiff's claims, the Court finds that the interests of justice warrant transfer so the plaintiff may proceed with his claims in an appropriate forum where he may be heard. The diversity of the parties and the defendant's status as a corporation organized under the laws of the State of Illinois, with its principal place of business there, suggest that the United States District Court for the Northern District of Illinois properly may exercise personal jurisdiction over the defendant, and could have done so at the time the plaintiff originally filed his claims. In addition, the contract between the parties stipulates that Illinois law shall govern the agreement. Compl. Ex. 1. The Court therefore finds that the interests of justice warrant transferring this case to the United States District Court for the Northern District of Illinois in accordance with 28 U.S.C. § 1631.

## CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over the defendant but that transfer to the United States District Court for the Northern District of Illinois is in the interests of justice. Accordingly, this case will be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631. All other arguments not expressly considered are deemed to be without merit. An appropriate order consistent with this Memorandum Opinion will follow.


July 19, 2007                                    _____/s/ *Thomas F. Hogan*_____
                                                      Thomas F. Hogan
                                                      Chief Judge